UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -X

STEELMASTERS, INC. D/B/A CARUSO
STEELMASTERS SECURITY PRODUCTS,

        Petitioner,  MEMORANDUM AND
   v.         ORDER

LOCAL UNION 580 OF THE INTERNATIONAL 05-CV-259 (MDG)
ASSOCIATION OF BRIDGE, STRUCTURAL
ORNAMENTAL AND REINFORCING IRON WORKERS,
AFL-CIO, and TRUSTEES OF LOCAL UNION 580
OF THE INTERNATIONAL ASSOCIATION OF
BRIDGE, STRUCTURAL ORNAMENTAL AND
REINFORCING IRON WORKERS EMPLOYEE
BENEFIT FUNDS,

        Respondents.

- - - - - - - - - - - - - - - - - - - -X

GO, United States Magistrate Judge:

  Petitioner Steelmasters, Inc. d/b/a Caruso Steelmasters Security Products ("Steelmasters") commenced this action in state court to stay an arbitration proceeding demanded by respondents Local Union 580 of the International Association of Bridge, Structural and Ornamental and Reinforcing Iron Workers, AFL-CIO ("Local Union 580") and Trustees of Local Union 580 of the International Association of Bridge, Structural and Ornamental Iron Workers Employee Benefit Funds ("Trustees"). After respondents removed the action to this Court, the parties consented pursuant to 28 U.S.C. § 636(c) to having me conduct any and all proceedings in this case, including determining respondents' motion for summary judgment to dismiss the petition.

For the reasons set forth below, respondents' motion is granted in part as discussed herein.

FACTUAL BACKGROUND

The following facts are undisputed except where otherwise noted. Petitioner Steelmasters is engaged in the manufacture and installation of ornamental iron products. Petition in Support of Motion to Stay Arbitration ("Petition") (ct. doc. 1) at ¶ 1. Matthew Rosio ("Rosio") is the President of Steelmasters. Affidavit of Matthew Rosio dated June 23, 2005 ("Rosio Aff.") (ct. doc. 10) at ¶ 1.

Local Union 580, which represents workers engaged in the Iron Working industry, is an unincorporated labor organization within the meaning of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001. Petition at ¶ 3; Affidavit of Dennis Lusardi dated May 19, 2005 ("Lusardi Aff.") (ct. doc. 8) at ¶ 3. The terms and conditions of employment of Local Union 580 members are governed by a collective bargaining agreement ("CBA") between Local Union 580 and the Allied Building Metal Industries, Inc. (the "Association"), a multi-employer association of companies that employ Local Union 580 members. Lusardi Aff. at ¶¶ 3, 6, Exh. A (CBA). The respondent Trustees administer various trust funds (the "Funds") established by Local Union 580 for the benefit of its members pursuant to various trust agreements with the

Association. Lusardi Aff. at ¶¶ 3, 4, Ex. B (Pension Fund Trust Agreement).

On March 3, 1998, Steelmasters employed members of Local Union 580 to perform iron work. Petition at ¶ 7; Lusardi Affidavit at ¶ 6. On that date, Rosio executed on behalf of Steelmasters a one page agreement with Local Union 580 (the "Short Form Agreement") agreeing to be bound by the terms of the CBA and various trust fund agreements involving the union. Lusardi Aff., Exh. C (Short Form Agreement). In the Short Form Agreement, Steelmasters agreed, inter alia, "to be bound by all the terms and conditions as set forth in the collective bargaining agreement between Allied Building Metal Industries, Inc. and the Union and agrees that said agreement is deemed incorporated herein as if it were herein set forth at length." Id. at § FIRST. Steelmasters also agreed "to pay to the Trustees of the respective Funds amounts negotiated with the Allied Building Metal Industry on behalf of the employees" and to "make available to the Funds for inspection and copy any and all of its records which, in the discretion of the Trustees, may be required to determine the correct amounts due to the respective Funds." Id. at §§ THIRD, FIFTH.

The Short Form Agreement further provided that "[r]esolution of grievances arising under the Agreement or in the Collective Bargaining Agreement shall be resolved under the grievance and arbitration procedures as provided in the Collective Bargaining Agreement." Id. at § SIXTH. The procedures for grievance and

-3-

arbitration of certain disputes contained in the CBA[1] involve a three tier system for handling disputes, the last of which involves arbitration of any unresolved "grievance, complaint, or dispute" before a designated Impartial Arbitrator.  <u>Id.</u>, Exh. A, §§ XXI(a)-(c).[2]  Other provisions of the CBA also refer to the arbitration of specific disputes.  <u>See</u>, <u>e.g.</u>, <u>id.</u>, §§ XX(k) and XXIX(f).

---

[1]   Neither party provided a copy of the CBA in effect on March 3, 1998.  Instead, respondents attached to the Lusardi Affidavit portions of a CBA covering the period from July 1, 2002 through June 30, 2005.  At oral argument, counsel for respondents represented that the CBA for the relevant periods preceding July 1, 2002 contained identical provisions regarding the term of the agreement and arbitration of grievances to those contained in the CBA submitted herein.  Counsel for petitioner accepted this representation and agreed to consideration of the excerpts submitted by respondents.

[2]   Section XXI of the CBA provides, in pertinent part, that:

> (a)  Any grievance, complaint, or dispute between the Union and the Employer arising out of this Agreement, or as to the meaning, interpretation, application or alleged violation of any provision or provisions of this Agreement shall be handled in the first instance by an officer of the Union designated by the Union and a representative of the Employer involved who is a member of the Association.
>
> (b)  If the representatives of the Union and the Employer fail to reach an agreement within five (5) work days, the grievance, complaint, or dispute shall be handled by a designee or designees of the Union and the Association....
>
> (c)  If the designees of the Union and the Association fail to reach an agreement ..., the grievance, complaint or dispute shall be submitted for final and binding determination by Eric J. Schmertz, as the Impartial Arbitrator....

The CBA in effect on March 3, 1998 also contained a duration clause, id. § XXXIX, which provides that:

> This Agreement, with any amendments thereof made as provided for therein, shall begin July 1, 1996 and remain in full force and effect until midnight of June 30, 1999 and, unless written notice be given by either party to the other at least two (2) months prior to June 30, 1999 of a desire for a change therein or to terminate the same, it shall continue in effect for an additional year thereafter. In the same manner, this Agreement, with any amendments thereof shall remain in effect from year to year thereafter, subject to termination at the expiration of any such contract year upon notice in writing by certified mail/return receipt requested given by either party to the other at least four (4) months prior to the expiration of such contract year. Any such notice as hereinabove provided for in this article, whether specifying a desire to terminate or to change at the end of the current contract year, shall have the effect of terminating this Agreement at such time.

Respondents' Rule 56.1 Statement at ¶ 13; Petitioner's Counter-Statement Pursuant to Rule 56.1 in Opposition to Motion for Summary Judgment at ¶ 13.

Steelmasters employed Local Union 580 members for six months, from March through September 1998. Rosio Aff. at ¶ 4; Lusardi Aff. at ¶ 6. Rosio avers that on March 10, 1999, he hand-delivered a letter to the Funds' business agent terminating the Short Form Agreement with Local Union 580. Rosio Aff. at ¶ 2; Petition at ¶ 7. Respondents deny having received said notice of termination. Lusardi Aff. at ¶ 8.

Although Steelmasters agrees that it subsequently employed members of Local Union 580 for sixteen weeks for the pay periods ending April 30, 2004 through August 13, 2004, the parties dispute whether Steelmasters employed Local Union 580 workers at

-5-

other times besides this period and the six month period in 1998. Lusardi Aff. at ¶ 6 and Exh. D (Weekly Remittance Reports); Rosio Aff. at ¶ 4. During the undisputed periods in 1998 and 2004 that Steelmasters employed members of Local Union 580, Steelmasters submitted completed Weekly Remittance Reports ("Remittance Reports") to the Funds indicating the names of the Local Union 580 members employed, the hours worked, wages paid and fringe benefit contributions due and owing to the Funds. Petition at ¶ 7; Lusardi Aff., Exh. D. The pre-printed Remittance Reports supplied by the Funds stated, in part: "These contributions shall constitute the acceptance by the employer-purchaser to abide by all terms and conditions of the collective bargaining agreement." Lusardi Aff., Exh. D.

By letter dated December 22, 2004, respondents demanded arbitration as to Steelmasters' failure to submit to an audit for the period June 1, 1999 through December 2004 in order to determine if proper contributions were made in accordance with the terms of the purported CBA and Trust Agreement between the parties. Petition at ¶ 4; Lusardi Aff. at ¶ 12. On January 10, 2005, Steelmasters filed the Petition in Kings County Supreme Court pursuant to NY CPLR § 7503 to stay arbitration. See Petition at ¶ 1. On or about January 19, 2005, respondents removed the case to this Court on the grounds that a federal question was raised under the LMRA and ERISA. Verified Petition for Removal at ¶ 7 (ct. doc. 3).

Respondents followed with the instant motion to dismiss, contending that Steelmasters is required to submit to arbitration because of arbitration clauses in the CBA and related Trust Agreement that are incorporated by reference in the Short Form Agreement petitioner signed. Respondents' Mem. of Law in Support of Summary Judgment (ct. doc. 9) at 4. Alternatively, respondents argue that petitioner is bound by the terms of the CBA through its course of conduct in employing Local Union 580 members intermittently from March 1998 through September 2004 and submitting to a payroll audit. Id. at 5-10; Lusardi Aff. at ¶ 11. Disputing that it had submitted to an audit, Steelmasters argues that there is no evidence that it intended to be bound by the CBA after it hand-delivered a letter terminating the CBA in 1999 and in any event, the CBA had expired by its own terms. Petition at ¶¶ 5, 9; Rosio Aff. at ¶¶ 2, 4.

## DISCUSSION

Summary judgment is appropriate pursuant to Fed. R. Civ. P. 56 when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Citizens Bank of Clearwater v. Hunt, 927 F.2d 707, 710 (2d Cir. 1991) (citations omitted); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating an absence of material facts and

once it has done so, the burden shifts to the non-moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In determining whether there is a genuine issue of material fact, the court must resolve ambiguities and draw inferences in favor of the non-moving party. Celotex, 477 U.S. at 322-323; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

Notwithstanding "a strong national policy favoring the arbitration of labor disputes, there is no general duty to submit a labor dispute to arbitration." Diamond Glass Corp. v. Glass Warehouse Workers and Paint Handlers Local Union, 682 F.2d 301, 303 (2d Cir. 1982). Rather, "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration" of any dispute unless it had agreed to do so. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002); AT&T Tech., Inc. v. Commc'ns Workers, 475 U.S. 643, 648 (1986). Whether a particular dispute between the parties is subject to arbitration is a question to be determined by the court. See Howsam, 537 U.S. at 83; AT&T Tech., 475 U.S. at 649; United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960).

Generally, in deciding whether a dispute must be submitted to arbitration, the court must determine whether an arbitration agreement exists and whether the dispute falls within the scope of the arbitration agreement. See Abram Landau Real Estate v. Benova, 123 F.3d 69, 72 (2d Cir. 1997). If the parties enter into an agreement containing an arbitration clause, "there is a presumption favoring arbitrability, particularly if the clause is broad and covers 'any differences' arising with respect to interpretation of the agreement." Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations, 107 F.3d 979, 982 (2d Cir. 1997); see At&T Tech., 475 U.S. at 650. Accordingly, "any doubts regarding the existence of an arbitration clause or the scope of its coverage in a particular dispute ought to be resolved in favor of coverage. See AT&T Tech., 475 U.S. at 649; CPR (USA) Inc. v. Spray, 187 F.3d 245, 256 (2d Cir. 1999).

There is no dispute that the parties entered into an agreement to arbitrate. Although Steelmasters suggests it is not bound by the CBA because it never received a copy, Rosio Aff. at ¶ 2, it overlooks the fact that it clearly agreed to arbitration in the Short Form Agreement. In this agreement, the parties agreed that "resolution of grievances arising under the Agreement or in the Collective Bargaining Agreement shall be resolved under the grievance and arbitration procedures as provided in the Collective Bargaining Agreement." See Lusardi Aff., Exh. C, § SIXTH. "Parties are plainly free to incorporate by reference, and bind themselves inter sese to, terms that may be found in

other agreements to which they are not a party." Ronan Assocs., Inc. v. Local 94-94A-94B, Int'l Union of Operating Eng'rs, 24 F.3d 447, 449 (2d Cir. 1994); see Inter County Glass, Inc. v. Trustees of Local Union 580 of the Int'l Ass'n of Bridge Structural and Ornamental Iron Workers Employee Ben. Funds, NO. CV04-3579(WDW), 2007 WL 2908094, at *5-*6 (E.D.N.Y. Sep. 28, 2007) (finding that employer was bound to arbitration provision in Local Union 580 CBA based on incorporation by reference in Jobsite Agreement). Not only did Steelmasters expressly agree to the arbitration procedures in the CBA, it acknowledged in the Short Form Agreement that it did receive a copy of the CBA. See Lusardi Aff., Exh. C, §§ FIRST, SIXTH. It was also on notice under the Short Form Agreement that it would be subject to the terms of the CBA and, more specifically, the procedures for dispute resolution and arbitration in the CBA. Thus, irrespective of whether Steelmasters received a copy of the CBA, it is "conclusively presumed to know [the] contents [of the Short Form Agreement] and to assent to them," in the absence of fraud or other wrongful act. Maye v. Smith Barney Inc., 897 F. Supp. 100, 108 (S.D.N.Y. 1995) (plaintiff claiming that it did not knowingly agree to arbitration is bound by arbitration clause in one page document it signed and obligated to read arbitration policy referenced in document); see also Smith v. Lehman Brothers, Inc., No. 95 CIV. 10326 (JSM), 1996 WL 383232, at *1 (S.D.N.Y. July 8, 1996) (plaintiff bound by the arbitration clause in application he signed despite assertion he was not

provided with copy of application and did not knowingly agree to arbitration).

Petitioner does not claim it was deprived of the opportunity to examine the one page Short Form Agreement or that it did not understand its terms. Thus, it "is bound by [the] contract it has signed unless it can show special circumstances that relieve it of the contractual obligation." Hetchkop v. Woodlawn at Grassmere, Inc., 116 F.3d 28, 34 (2d Cir. 1997); Unique Woodworking, Inc. v. New York City Dist. Council of Carpenters' Pension Fund, No. 07 CIV. 1951 (WCC), 2007 WL 4267632, at *3-*4 (S.D.N.Y. Nov. 30, 2007). Petitioner neither contends nor provides any facts to show fraud-in-the-execution or other special circumstances which would render the terms of the Short Agreement unenforceable. See Smith, 1996 WL 383232, at *1 (plaintiff's assertion that he was not aware of arbitration clause in agreement he signed does not amount to duress, coercion or fraud sufficient to negate arbitration provision); cf. Hetchkop, 116 F.3d at 34 (employer claimed he was presented with the signature page of a document that had been substituted for a different agreement that had been discussed); Operating Eng'rs Pension Trust v. Gilliam, 737 F.2d 1501, 1504-05 (9th Cir. 1984) (employer not bound by agreement he signed because he had reasonably relied on the union's representation that the document was of a wholly different nature).

In addition, petitioner argues that it had no obligation to arbitrate after it delivered its letter in March 1999 terminating

-11-

its agreement with the Union. Although the question of contract termination is one that usually must be addressed by the court, termination "is not invariably a non-arbitrable question, for arbitration clauses vary widely in their scope, and contracts may be terminated in any number of ways." Rochdale Village, Inc. v. Public Service Employees Union, Local No. 80, 605 F.2d 1290, 1294 (2d Cir. 1979). As the Second Circuit later observed in Abram Landau Real Estate v. Bevona, 123 F.3d 69, 72 (2d Cir. 1997), the question whether there is a valid agreement to arbitrate in effect at a particular time ordinarily arises in the context of two disputes: (1) whether the parties ever entered into an arbitration agreement at all or (2) whether an arbitration agreement has expired or been terminated. Id. Although courts typically decide the issue whether parties have entered into an arbitration agreement, the latter issue of expiration or termination of an agreement is a different dispute that ordinarily involves interpretation of other clauses of a collective bargaining agreement. Id. at 72-73. Where an agreement "contains a sweeping arbitration clause covering all disputes involving the meaning of terms and provisions of the agreement and where the arbitration clause does not expressly exclude disputes over the termination provision or the 'evergreen' clause, disputes over these matters should be submitted to arbitration." Id. at 73. In short, the issue of contract termination must be arbitrated if there is "'at least...a colorable claim under the contract that the contract

has not been terminated.'"  Ottley v. Sheepshead Nursing Home, 688 F.2d 883, 886 (2d Cir. 1982); see Rochdale Village, 605 F.2d at 1295 ("[I]f the arbitration clause covers disputes as to contract interpretation, and the termination is alleged to have occurred on a basis 'implicit in (the) contract,' the termination question is arbitrable.") (citations omitted).

The arbitration clause in the Short Form Agreement requires arbitration of any "grievances arising under the Agreement or in the Collective Bargaining Agreement" which are not first resolved in the first two grievance steps provided in the CBA, as modified by the Short Form Agreement.  Such a provision is similar to the provision analyzed by the Second Circuit in Rochdale, which required arbitration of "any and all disputes hereunder" and did not contain any provision excluding particular disputes from arbitration.  See Rochdale, 605 F.2d at 1295.  As the Second Circuit noted, the clause is "broad, but it is not unlimited." Id.  The use of the word "'hereunder' after the otherwise all-inclusive phrase 'any and all disputes' has the effect of limiting, albeit slightly, the parties' duty to arbitrate[] [a]ll disputes arising 'under' the agreement ... [but not] those that are collateral to the agreement ...." Id.  Accordingly, the Court found that the questions whether the union's notice of its intent to terminate constituted compliance with the period specified under the collective bargaining agreement at issue and when the notice period began are questions arising under that agreement that fell within the arbitration clause.  Id.

The dispute herein concerns whether petitioner's March 1999 letter, which this Court assumes for purposes of the motion was personally delivered, terminated the Short Form Agreement and its obligations under the CBA. The Short Form Agreement does not contain a termination clause apart from the terms incorporated by reference from the CBA and neither agreement excludes any issue from arbitration or the other dispute resolution procedures in the CBA. Whether the termination clause in the CBA applies and whether Steelmasters' notice of termination constituted substantial compliance sufficient to terminate the agreements necessarily requires an interpretation of the agreements that must be determined by the arbitrator. See id.; see also Corallo v. Merrick Cent., 733 F.2d 248, 252-53 (2d Cir. 1984); Ottley, 688 F.2d at 887 (whether employer's withdrawal from multi-employer association resulted in immediate termination of agreement and whether termination could occur only within period specified in agreement must be decided by arbitrator under clause providing for arbitration of all questions of interpretation or application of agreement); Costco Wholesale Corp. v. Int'l Broth. of Teamsters, Local 210, NO. 00 CIV. 7945 (DLC), 2001 WL 197041, at *3 (S.D.N.Y. Feb. 28, 2001); Duane Street Assoc., No. 00CIV3861 (SHS), 2000 WL 802889 (S.D.N.Y. June 21, 2000). Likewise, if petitioner's letter is treated as a repudiation of the agreements, the question of repudiation is arbitrable since the propriety of any unilateral termination also requires

assessment of the terms of the agreements.  Rochdale Village, 605 F.2d at 1297.

If the arbitrator determines that Steelmasters did not effectively terminate the CBA and Short Form Agreement,[3] the Court would not need to address respondents' alternative argument that Steelmasters' post-termination conduct evidences its intention to be bound by the arbitration clauses in the CBA.  See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-46 (1995) (court should decide whether arbitration contract bound parties who did not sign agreement).  However, this Court finds that respondents are not entitled to summary judgment in any event, given the sparse record before the Court and the clear disputed facts concerning Steelmasters' conduct from 1999 through 2004.

A collective bargaining agreement need not be signed so long as the parties agree to its substantive terms.  See Brown v. C. Volante Corp., 194 F.3d 351, 355 (2d Cir. 1999).  Rather, a court should examine the surrounding circumstances and the conduct of the parties to ascertain the parties' intent.  Id.; see Baskin v. Hawley, 807 F.2d 1120, 1128-29 (2d Cir. 1986).  Among the factors courts examine in determining whether employers have adopted the terms of a collective bargaining agreement through their conduct

---

[3]  Local Union 580 also argues that the Trust Agreement provides for arbitration at "[p]aragraph 'SEVENTH.'" Respondents' Mem. of Law in Support of Summary Judgment (ct. doc. 9) at 9-10. However, the Trust Agreement submitted to the Court neither provides for arbitration nor contains a "[p]aragraph 'SEVENTH.'"

are whether wages were paid as required by the current collective bargaining agreement, the submission of remittance reports for fringe benefits, the existence of other documents evidencing assent and whether the employer has submitted to an audit in the past. Bricklayers Local 21 of Ill. Apprenticeship and Training Program v. Banner Restoration, Inc., 385 F.3d 761, 766 (7th Cir. 2004); Brown, 194 F. 3d at 353; Robbins, 836 F.2d at 332; Trustees of Atlanta Iron Workers, Local 387 Pension Fund v. S. Stress Wire Corp., 724 F.2d 1458, 1459-60 (11th Cir. 1983) (per curiam).

In arguing that Steelmasters reaffirmed the CBA by its course of conduct, respondents point to remittance reports that Steelmasters submitted for the 16 weeks from April 2004 through August 2004, the payment by Steelmasters of contractually mandated wages and some of its benefit obligations under the CBA, and an audit of its books and records by Steelmasters. See Lusardi Aff. at ¶ 11, Exh. D; Rosio Aff. at ¶ 4. However, Steelmasters disputes that it has submitted to an audit and respondents provide neither documents indicating that one was conducted nor any specific information regarding the audit, such as its date or the results. In addition, although Steelmasters submitted 16 weeks of remittance reports in 2004 and paid union wages and benefits in accordance with the CBA, courts finding an employer's "course of conduct" sufficient to constitute acceptance of a binding CBA typically involved significantly longer periods of remittance report submissions. See

Bricklayers, 385 F.3d at 767 (finding that employer had assented to terms of an unsigned CBA after submitting monthly contribution reports to the Funds for nearly 7 years); Brown, 195 F.3d at 353 (employer submitted monthly remittance reports for 6 years); Robbins, 836 F.2d at 331-33 (employer paid wages and contributions for 2 years per the CBA); Gariup v. Birchler, 777 F.2d 370, 374-76 (7th Cir. 1985) (employer paid wages and contributions listed in CBA for 1 and ½ years).

In addition, courts have also found significant that a party had previously signed some sort of agreement containing an arbitration clause. For example, in Brown, the Second Circuit found that defendant manifested its intent to be bound by the exchange of two unsigned draft CBA's created after the termination of the original CBA, as well as by signing the original CBA. Brown, 195 F.3d at 355 n.1. Given the dispute over whether an audit was conducted, summary judgment is not appropriate on the issue of Steelmasters' course of conduct, even if the bare facts presented would otherwise be sufficient for a determination of the legal issue presented.

Finally, Steelmasters' defense that respondents' arbitration demand is barred by laches is a procedural question to be determined by the arbitrator. Howsam, 537 U.S. at 84 ("allegations of waiver [or] delay" should be decided by arbitrator). "Once a court finds that, as here, the parties are subject to an agreement to arbitrate, and that the agreement extends to 'any difference between them, then a claim that

particular grievances are barred by laches is an arbitral question under the agreement."  Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Flair Builders, Inc., 406 U.S. 487, 487 (1972).

CONCLUSION

For the foregoing reasons, since there are no genuine issues of material fact as to whether the parties entered into an agreement to arbitrate, respondents' motion for summary judgment is granted in part.  The Court directs the parties to proceed with arbitration before the Honorable Eric J. Schmertz or a substitute Impartial Arbitrator selected in accordance with section XXIX of the CBA.  Given the possibility that the arbitrator will rule that the agreement to arbitrate was terminated and this Court will need to determine whether an agreement to arbitrate exists based on petitioner's post-termination course of conduct, the Petition to Stay Arbitration is dismissed with leave to re-open within sixty days after such determination.

**SO ORDERED.**

Dated:    Brooklyn, New York
          February 1, 2008

                                          /s/
                                         MARILYN D. GO
                                         UNITED STATES MAGISTRATE JUDGE